## Philadelphia v. Konopacki

*A. Pasquarella,* Assistant City Solicitor, for plaintiff.

*Kenneth Aaron,* for defendant.

TAKIFF, *J.,* November 20, 1975 — This action was instituted by the City of Philadelphia as a code enforcement complaint in the Municipal Court under the Wage Tax Ordinance of December 13,

1939, as amended: Section 19-1500 of the Philadelphia Code. After judgment was entered in Municipal Court, defendant perfected an appeal to this court. Plaintiff's complaint alleges that defendant is an individual who does not reside in the City of Philadelphia but who was employed at the United States Naval Shipyard during the years 1969 through 1973 and failed to pay city wage tax; the action is for payment of a fine of $300 for violation of section 19-508 of the Philadelphia Code for each of the years in question. Six preliminary objections and/or demurrer are asserted by defendant which we will consider seriatim, as submitted:

## I. *Lack of jurisdiction.*

Defendant alleges that plaintiff's complaint seeks a criminal penalty and that this court, therefore, has no jurisdiction over the subject matter, the courts of the United States having exclusive jurisdiction over crimes committed upon a Federal enclave such as the Philadelphia Naval Base.

The issue of whether actions for penalties, denominated as fines under municipal ordinances, are civil or criminal in nature was thoroughly dealt with in York v. Baynes, 188 Pa. Superior Ct. 581, 149 A. 2d 681 (1959), and resolved against the contention of defendant. See also Commonwealth v. Hanzlik, 191 Pa. Superior Ct. 460, 157 A. 2d 97 (1960). In Philadelphia v. Home Agency, Inc., 4 Pa. Commonwealth Ct. 174, 176, 177 285 A. 2d 196 (1971), that court noted:

"It has been consistently held by the appellate courts of this State that prosecutions under municipal ordinances are civil, not criminal actions . . .

"So many practitioners have been broken on the

anvil of the principle settled by the cases cited, that we feel strongly that it should not be put into question again in this case."

Defendant cites to the contrary Commonwealth v. Cabell, 199 Pa. Superior Ct. 513, 185 A. 2d 611 (1962); however, that case involved an admittedly criminal prosecution brought in the name of the Commonwealth and prosecuted by the district attorney. The provision of the Home Rule Charter there in question declared certain conduct to be a misdemeanor and the issue was whether the city had the power to create a crime (answered in the affirmative by the court on appeal). Thus, Cabell did not deal with the civil penalty/fine issue.

Philadelphia v. Cline, 158 Pa. Superior Ct. 179, 44 A. 2d 610 (1945), which was followed in Commonwealth v. Rohanna, 167 Pa. Superior Ct. 338, 74 A. 2d 807 (1950), held that the privilege against self-incrimination is available to a defendant in an action for violation of a municipal tax ordinance. It does not follow from this that actions to enforce penalties or fines are for all purposes criminal rather than civil in nature.

Tate v. Short, 401 U.S. 395, 91 S. Ct. 668 (1971), also fails to establish defendant's contention. That case dealt with the constitutionality of imprisonment for defendants who, due to indigency, were unable to pay traffic fines. The Supreme Court did not discuss the civil or criminal character of such fines.

The answer to defendant's contention in this aspect of the petition lies in a restatement of its premise and the tortured syllogism which follows: The nonpayment of the tax *occurred* on the Federal enclave. Hence, the "quasi-criminal" act having been done on a Federal sanctuary, neither the

Commonwealth nor the City of Philadelphia have legislative jurisdiction with respect to acts there done. Therefore, no validly prohibited action, whether denominated criminal or quasi-criminal, occurred. There can be no enforcement of a penalty or fine for a breach of the impermissibly legislated default. This attempted equation of the place of origin of the income with the mandated tax and the penalty for nonpayment is simply without any merit, particularly in light of the explicit declaration of the Buck Act, infra.

## II. *Violation of Pa. R.C.P. 1020(a).*

Defendant objects to paragraphs four, five and six under Pa. R.C.P. 1020(a), which provides:

"The plaintiff may state in the complaint two or more causes of action triable in the same county which arise from contract or are quasicontractual. Each cause of action and any special damage related thereto shall be stated in a separate count containing a demand for relief."

Where there are separate causes of action, there must be separate counts in the complaint, but where there are several claims on the same cause of action, there need not be separate counts: Goodrich-Amram §1020(a)-1.

The paragraphs objected to read as follows:

"4. The plaintiff based its assessment upon income data supplied by the Federal Agency which showed that the defendant earned $10,578.00 in 1969; $8,717.00 in 1970; §9,614.00 in 1971; $10,133.00 in 1972; and $10,969.00 in 1973.

"5. The defendant has failed to pay to the Department of Collections the taxes due under the aforesaid Ordinance, or the balance of taxes due,

together with the interest and penalty due thereon, as more fully set forth in the statement hereto attached, marked Exhibit "A", and made a part hereof.

"6. The plaintiff claims a fine of Three Hundred Dollars ($300.00) from the defendant in accordance with Section 19-508 of the Philadelphia Code for each of the following five (5) violations of the Code: failure to file Wage Tax returns and/or pay Wage Tax, or the balance of tax, together with interest and penalty due thereon, for the years 1969 through 1973, inclusive, for the total sum of Fifteen Hundred Dollars ($1,500.00).

"WHEREFORE, The Plaintiff demands judgment against the Defendant for the sum of $1,500.00."

A "cause of action" does not consist of facts but of the unlawful violation of a right or breach of duty which the facts pleaded disclose, no matter how multiple the violations or breaches may be of that single right or duty. A "series of transactions or occurrences" need not be pleaded in separate counts: McFadden v. McFadden and McFadden, 13 Cumb. 148 (1963).

Moreover, Rule 1020(a) must be applied in accordance with the mandate of Pa. R.C.P. 126 that "[t]he rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." See Johnston v. Shapp, 57 D. & C. 2d 753 (1972), in which the court notes that "[i]t is clear that the amended complaint before

us is violative of the spirit of rule 1020," but over-rules the objections, saying:

"Keeping in mind, however, the mandate of General Mills, Inc. v. Snavely [203 Pa. Superior Ct. 162 (1964), dealing with Rule 126], and the availability of pretrial discovery proceedings, we will disregard this error of procedure which does not affect the substantial rights of the parties."

Defendant alleges that his right to remain silent (Comm. v. Cabell, supra) can be safeguarded only by requiring plaintiff to allege each violation in a separate count. This is a specious and dilatory contention. Any impingement upon defendant's constitutional rights, if to be invoked or waived as to some but not all of the years in question, can be adequately safeguarded by appropriate pleading.

III.   *Noncompliance with Pa. R.C.P. 1022.*

Pa. R.C.P. 1022 provides:

"Every pleading shall be divided into paragraphs numbered consecutively. Each paragraph shall contain as far as practicable only one material allegation."

Defendant objects to paragraphs two and four of the complaint which state:

"2.   The Defendant is Edward Konopacki, an individual who resides at 1351 Chase Street, Camden, New Jersey, who at all times hereinafter mentioned, was employed at the U. S. Naval Shipyard, Philadelphia Naval Base, or elsewhere, in the City of Philadelphia, Pennsylvania, during the years 1969 through 1973, inclusive, whose Social Security Number is 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, who was assigned Badge Number 072-49678 by the employing Agency, and who was assigned Account Number 2-177-6818304 by the Department of Collections.

"4. The Plaintiff based its assessment upon income data supplied by the Federal Agency which showed that the Defendant earned $10,578.00 in 1969; $8,717.00 in 1970; $9,614.00 in 1971; $10,133.00 in 1972; and $10,969.00 in 1973."

The considerations here are similar to those raised by the preceding objection. Under Rule 1022, the test is whether defendant would be subjected to prejudice or violation of a constitutionally protected right in framing his answer: Lynch v. Hoover, 3 D. & C. 2d 686 (1955). As previously observed, there should be no problem in clearly framing an answer to the challenged paragraphs of the complaint.

IV. *Philadelphia's authority to enforce collection of its wage tax against a nonresident working in a Federal exclusive jurisdiction enclave.*

Under the Buck Act of October 9, 1940, 4 U.S.C. §106:

"(a) No person shall be relieved from liability for any income tax levied by any State, or by any duly constituted taxing authority therein, having jurisdiction to levy such a tax, by reason of his residing within a Federal area or receiving income from transactions occurring or services performed in such area; and such State or taxing authority shall have full jurisdiction and power to levy and collect such tax in any Federal area within such State to the same extent and with the same effect as though such area was not a Federal area."

Assuming that Philadelphia has the power to levy the city wage tax from defendant, defendant demurs to the complaint and asserts that the city may not effectuate compliance with such tax

power by legislating the imposition of a fine or penalty for violation of its tax ordinance.

This issue was raised and decided contrary to defendant's contention in Philadelphia v. Cline, supra; Application of Thomas, 157 F. Supp. 93, affirmed, 258 F. 2d 320, cert. den. 358 U.S. 931 (1957).

Schwartz v. O'Hara Twp. School District, 375 Pa. 440, 100 A. 2d 621 (1953), cited by defendant, does not establish his contention in this regard. Schwartz was a mandamus action to compel free education in local public schools for children residing on a Federal installation. The Supreme Court held that while the Buck Act rendered residents of Federal areas liable for certain local taxes, it did not impose upon local districts the cost of public education for the children of such residents. The language of Schwartz relied on by defendant ("All that was decided in [Kiker v. Philadelphia, 346 Pa. 624, cert. den. 320 U.S. 741 (1943)] was that the City of Philadelphia could lawfully collect a tax on the wages [income] of a New Jersey resident employed at the League Island Navy Yard, a Federal area within the geographic confines of Philadelphia") was directed toward a proposition of local responsibility for provision of services, which is entirely different from the issue here.

Collins v. Yosemite Park & Curry Co., 304 U.S. 518, 58 S. Ct. 502 (1938), involved an attempt by the State to license distribution of alcoholic beverages upon a Federal installation, where collection of tax therefrom was permitted. These cases stand on a far different footing than the instant case which challenges the municipality's power to enforce its right to collect the tax, a power which is

clearly incident to that right, in contrast to the matters at issue in Schwartz and Collins.

Defendant admits that Philadelphia v. Cline, supra, determined that the city may impose this fine upon him; however, he contends that the Superior Court holding in Cline is wrong. The question raised by a demurrer is whether upon the facts averred, the law declares with certainty that no recovery is permitted: Buchanan v. Brentwood Fed. Sav. & Loan, 457 Pa. 135, 320 A. 2d 117 (1974); International Union of Operating Engineers v. Linesville Constr. Co., 457 Pa. 220, 322 A. 2d 353 (1974). No such certainty exists here as would warrant dismissing this action and the relief sought by way of this court's reversal of the Superior Court's conclusion is self-answering.

V. *Defendant's liability to the City of Philadelphia to pay the city wage tax or to file a city wage tax return.*

Defendant admits that Kiker v. Philadelphia, 346 Pa. 624, 31 A. 2d 289, cert. den. 320 U.S. 741 (1943), held that the Buck Act imposed upon non-residents the obligation to pay taxes to the State in which the Federal enclave was originally located, but here contends that the determination by the Supreme Court in Kiker is wrong. A demurrer on such grounds cannot be sustained. The numerous cases cited in plaintiff's memorandum of law have upheld plaintiff's right to collect this tax; the assertion of this demurrer that the law is to the contrary, notwithstanding the holding of our Supreme Court, is a miasma of wishful thinking and faulty analysis.

Defendant further asserts that the Buck Act only permits imposition of income taxes and since the Sterling Act of August 5, 1932, P.L. 45, 53 P.S. §15971, prohibits plaintiff from imposing a tax on any person, property, transaction, etc., where the Commonwealth has preempted the power to tax, plaintiff's wage tax is either not an income tax and, hence, outside of the insulation of the Buck Act, or, if an income tax, violates the Sterling Act in view of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6 (No. 2), as amended, 72 P.S. §7361. This is a superficially cogent argument but it ignores the explicit language of the Tax Reform Code of 1971, supra, at section 7359:

"Notwithstanding anything contained in any law to the contrary, the validity of any ordinance or part of any ordinance or any resolution or part of any resolution, and any amendments or supplements thereto now or hereafter enacted or adopted by any political subdivision of this Commonwealth for or relating to the imposition, levy or collection of any tax, *shall not be affected or impaired by anything contained in this Article.*" (Emphasis supplied.)

The intention of the legislature, when enacting the Pennsylvania income tax, that all local taxes calculated or measured upon income were to be retained notwithstanding the prohibitions of the Sterling Act, supra, could not have been stated more explicitly.

## VI. *Good Faith Resistance*

Defendant finally argues that his good faith resistance should not subject him to the fine here sought. The assertion of good faith may be a sub-

stantive issue of some dubious dimensions in view of the many prior cases unsuccessfully challenging every aspect of the Philadelphia wage tax. In any event, the assertion of this plea is a factual matter appropriately raised by answer and cannot be the basis of a dismissal of the action as presently sought.

### ORDER

And now, November 20, 1975, the preliminary objections and/or demurrer are dismissed and overruled with leave to defendant to file an answer to the complaint within 20 days from the date hereof.