DECISION
This is an appeal from a decision of the Zoning Board of Review of the City of Providence (Board). The appellants, Edward and Lillian Bomes (Bomes), are appealing the Board's October 1, 1997 decision granting Robert Amendolara's, Phoebe Call's, D.V.M., and Janice Fuller's (collectively, the Applicants) petition for a use variance allowing a "cat only" veterinarian office in a "R3" residential zone. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
The property at issue is located at 244 Gano Street. The Bomes are an aggrieved party. G.L. 1956 § 45-24-31 (4). They are abutting landowners, owning two apartment buildings in close proximity to the subject parcel. Amendolara is the owner of the property which apparently is "up for sale." Call, a veterinarian, and Fuller are the "would be" purchasers of the property. It appears that the successful attainment of the use variance allowing for the animal hospital is the contingency upon which the purchase and sale hinges.
The property is indentified as Assesor's Plat 14, Lot 18, improved with a two and one-half story wood-framed structure and detached garage upon it. The property lies in a R3 residential zone. Currently a professional office, an interior design office with one tenant occupies the building. Testimony was offered, however, no documentary evidence was offered that a variance, granted at some point earlier in the property's history, permits this use. The proposed plan for the building will convert the second and third floors into a single townhouse style apartment, a permitted use.
The Applicants submitted an application to the Board requesting a use variance to permit a "cat only" veterinarian office on the first floor of the property. At a properly advertised hearing, the Board considered the application on September 30, 1997.
The transcript of the hearing reveals that applicant Fuller provided testimony as to the proposed use. She discussed the scope of the veterinarian's work to include only the treatment of cats and short term boarding. (R. at 2-7) She also testified as to potential noise and odors, the disposal of medical waste, the availibility of parking, and the volume of traffic to and from the site. (R. at 2-7) James Sloan, accredited by the Board to be a real estate expert, spoke next on behalf of the Applicants. (R. at 4-6) Sloan provided to the Board a written summary of the proposed change and its resulting impact on the surrounding area. He testified as to the report's contents orally. He termed the neighborhood in which the subject property is located as a "mix" of professional and multi-family residences. Sloan noted that external changes to the property would not be required to accomodate the proposed cat clinic. Intensity of use would in fact be lowered, stated Sloan, as a result of the conversion of the second and third floor to a single residential use. Sloan additionally opined that he projected no diminution in the value of surrounding properties should the proposed use move forward.
Four witnesses, some of whom served in a representative capacity, spoke out in opposition to the proposed variance. (R. at 7-19) Mr. Jim Feeley spoke of congestion concerns and further commercial intrusions into a residential area. (R. at 7-10) Mr. Donald Alba noted a likely increase in congestion and the failure of Applicants to demonstrate legal hardship warranting the variance. (R. at 12-14) Mrs. Diana Alba further emphasized the residential character of the surrounding area. (R. at 17-18) Mr. Preston Halperin, an attorney acting on behalf of the Bomes, submitted a written document opposing the application. In his oral argument, Halperin stressed that the legal standard to be borne by the Applicants, in seeking a variance, was not met. (R. at 14-17)
The Department of Planning and Development recommended that the variance be denied on the grounds that the Applicants did not meet the requisite legal standard.
On October 1, 1997, after deliberation, the Board granted the Applicant's variance allowing for the "cat only" veterinarian clinic. (Resolution NO. 8087.)
 Standard of Review
Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D), which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolouv. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters. AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977).
 Animal Hospital
Applicants, in their application to the Board, sought a "cat only" veterinarian office variance. The City of Providence Zoning Ordinance does not provide for a "cat only" veterinarian office use nor, for that matter, does it provide for a veterinarian office. The Ordinance does provide for an "Animal Hospital." Prov. Zon. Ord. Art. III, § 303, Use Code 46.1. An animal hospital is not a permitted use in a R-3 district. Id. The ordinance does not, however, define "animal hospital," nor does the Zoning Enabling Act under which the ordinance is promulgated. G.L. 1956 § 45-24-27 et seq.
In defining this term, the Court is to apply the plain and ordinary meaning of the words of the ordinance. Kirby v. PlanningBoard of Review of Town of Middletown, 634 A.2d 285 (R.I. 1993). A "hospital" is defined as "an institution where the sick or injured are given medical or surgical care." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 583 (9th ed. 1991). Fuller stated that the proposed animal service "would be on a clinic, hospital basis." (R. at 3) She also referenced that "surgery" on cats would occur within the building and that "medical waste" would be disposed of in accordance with the rules applied to any "human hospital." (R. at 6) The proposed use variance is thus most accurately termed a variance for an animal hospital. See Carroll v. Zoning Board ofReview of the City of Providence, 104 R.I. 676, 681,248 A.2d 321, 324 (1968); Lescault v. Zoning Board of Review ofCumberland, 91 R.I. 277, 162 A.2d 807 (1960).
Applicants argue, however, that the variance sought is simply a continuation of the professional use already in existence at the site. The rules of statutory construction apply equally to the construction of ordinances. Mongony v. Bevilacqua,432 A.2d 661 (R.I. 1981) (citations omitted). A professional service is not permitted in a R3 district. Prov. Zon. Ord. Art. III, § 303, Use Code 46. The property is currently used as a professional interior design office. An animal hospital servicing cats is unlike an interior design office. There is no evidence in the record that the previous variance granted to Amendolara permitted an animal hospital in addition to an interior design office.
 Use Variance
The Bomes contest the Board's grant of Applicants' request for a use variance. A use variance is defined as "[p]ermission to depart from the use requirements of a zoning ordinance where the applicant for the requested variance has shown by evidence upon the record that the subject land or structure cannot yield any beneficial use if it is to conform to the provisions of the zoning ordinance." G.L. 1956 § 45-24-31 (61)(a). Providence has in effect a zoning ordinance in conformance with the Zoning Enabling Act. Prov. Zon. Ord. Art. I, § 100 et seq. As to a use variance, the ordinance requires that applicants meet a five-pronged standard modelled, nearly verbatim, after the standard set out in G.L. 1956 § 45-24-41. Prov. Zon. Ord. Art. IX, § 902.3.
The petitioners must demonstrate that the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure; that the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain; that the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this ordinance o[r] the Comprehensive Plan; that the relief granted is the least relief necessary; and, that in granting a use variance the subject land or structure cannot yield any beneficial use if it is required to conform to the provisions of this ordinance. Id.
A real hardship stemming from the unique characteristics of the land or structure must be established. Id. Unnecessary hardship exists when literal application of the zoning ordinance completely deprives an owner of all beneficial use of his property. Almeida v. Zoning Bd. of Review of the Town ofTiverton, 606 A.2d 1318, 1320 (R.I. 1992) (citation omitted). An indirect confiscation of the property would occur as a result of the hardship, but for a variance. Id. The Applicants, in theirmemorandum, state the unique characteristic inherent to the structure to be its configuration as an office. They further state that renovating the office design to a residential layout would entail a hardship. However, Fuller, as representative of the Applicants, provided no testimony as to the structure's uniqueness at the hearing nor did the Board inquire into this requisite consideration before making its decision. Though some economic cost is undoubtedly involved in renovating the property to suit residential needs, such a cost does not amount to a hardship due to the unique characteristics of the structure. SeeGaglione v. DiMuro, 478 A.2d 573 (R.I. 1984) ("`naked assertion of economic unfeasibility is meaningless'") (citation omitted).
As to the second prong, the record demonstrates that any existing hardship is the direct result of the applicant/owner Amendolara. Testimony was offered that he sought a prior variance to allow for his interior design office. The testimony further reveals that upon attaining the variance, he then apparently changed the physical configuration of the first floor to accommodate his business needs. Thus, any claim of present economic hardship to bring the structure into conformity with residential needs, the permitted use, is solely the result of his prior action. Rozes v. Smith, 120 R.I. 515, 388 A.2d 816 (1978).
Thirdly, the Applicants' burden was to also establish that an animal hospital would not alter the general character of the surrounding area, a district zoned as residential. To this end, Sloan presented a "Real Estate Summary" of the subject property and testified that, based on his experience, neighboring properties would suffer no diminution in value nor be adversely affected. As to this element, Applicants did offer competent evidence upon which the zoning board could rely in rendering its decision. Caswell v. George Sherman Sand Gravel Co., Inc.,424 A.2d 646 (R.I. 1981).
The relief offered by a variance is to be the least relief necessary. G.L. (1956) § 45-24-41 (c)(4); Prov. Zon. Ord. Art. IX, § 902.3 (A)(4). The Board allowed relief from the permitted residential use in permitting the cat only animal hospital. Nothing is to be gleaned from the record demonstrating that this relief is the least relief necessary. Standish-JohnsonCo. v. Zoning Bd. of Review of the City of Pawtucket,103 R.I. 487, 238 A.2d 754 (1968).
Finally, the grant of a variance is contingent upon a showing that the subject land or structure could not otherwise yield any beneficial use. G.L. (1956) § 45-24-41 (D); Prov. Zon. Ord. Art. IX § 902.3 (B)(1). Sloan is the only witness of the Applicants to offer testimony as to this requirement. He stated, "I think if it (the variance) were to be denied, there certainly would be a beneficial use that would be lost to the owner of the property." (R. at 6) (emphasis added). The correct standard requires a deprivation of all beneficial use of the property.Almeida, 606 A.2d at 1320 (emphasis added). The residential use of the structure is certainly available. As noted, the economic hardship resulting from a renovation does not constitute lack of all beneficial use.
 Findings of the Board
Additionally, the Bomes argue that the Board's decision as articulated in both the record and Resolution NO. 8087, failed to "pinpoint" specific evidence upon which it relied and that such a decision is thus reversible error for it is conclusional rather than factual.
In considering an appeal from a Zoning Board of Review, the court is required to review the record of the hearing before the board. G.L. 1956 § 45-24-69 (C). In reviewing a board's decision, the court must examine the entire record to determine whether "substantial evidence" exists to support the board's finding. Salve Regina College v. Zoning Bd. of Review,594 A.2d 878 (R.I. 1991) (citations omitted). A Zoning Board of Review is required "`to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review.'" C.P.W. v. City of Cranston,684 A.2d 689, 691 (R.I. 1996) (citing Thorpe v. Zoning Board ofReview of North Kingston, 492 A.2d 1236, 1236-1237 (R.I. 1985)). Zoning boards that fail to comply with such obligations run the risk of reversal if the court is unable to find sufficient grounds for the decision. Hopf v. Board of Review of the City ofNewport, 120 R.I. 275, 288, 230 A.2d 420, 428 (1967). If the court is able "to ascertain from the record the reasons for the board's decision," Richards v. Zoning Board of Review of the City ofProvidence, 100 R.I. 212, 200, 213 A.2d 814, 818 (1965), and said decision is supported by substantial evidence, it will be upheld.
The Board did articulate findings of fact and conclusions of law in its resolution granting the variance. However, the record, upon which that decision is based and must be based, is scant.Id. The Board's deliberation following the public hearing spans two and one-third pages of transcript. (R. at 19-21) The focus of this brief discussion, however, involves only the conditions (the method of waste disposal) to be imposed upon the variance. Furthermore, the record is devoid of competent evidence as to a majority of the use variance elements to be applied in meeting the Applicants' burden and upon which the Board is to base its decision. Id.
The Board's decision contained in the record is conclusional. Legal consideration by the Board, as addressed in its resolution, is token in nature amounting to the "recital of a litany." IrishPartnership v. Rommel, 518 A.2d 356, 359 (R.I. 1986) (citations omitted). Such a result warrants reversal of the Board's decision. See Hopf, 230 A.2d at 428.
After review of the entire record, this Court finds that the Board's decision prejudiced substantial rights of the appellants, the Bomes. The decision, Resolution NO. 8087, is affected by error of law and is clearly erroneous in view of the reliable, probative, and substantial evidence of the record. Therefore the decision must be and is reversed.
Counsel shall submit the appropriate judgment for entry.